UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : : |
| Plaintiff, | : : |
| v. | Civil Action No: 2:10-cv-00747-RTR : : |
| SUJATA SACHDEVA and JULIE MULVANEY, | : : : |
| Defendants. | : : |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF THE PROPOSED SETTLEMENT WITH JULIE MULVANEY**

Andrea R. Wood
John E. Birkenheier
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398
E-mail: woodar@sec.gov
E-mail: birkenheierj@sec.gov

# INTRODUCTION

Pursuant to the Court's September 14, 2012 Decision and Order ("September 14 Order"), Plaintiff Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this Memorandum in support of the entry of the proposed consent judgment to resolve the SEC's claims against Defendant Julie Mulvaney ("Mulvaney"). Specifically, in the September 14 Order, the Court asked the SEC to submit a brief addressing whether the proposed consent judgment is "fair, reasonable, adequate and in the public interest."

Mulvaney has agreed to resolve the claims against her by consenting to the entry of a final judgment that (i) permanently restrains and enjoins her from violating Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5 and 13b2-1 thereunder, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder; (ii) orders her to pay disgorgement of $22,600, plus prejudgment interest of $5,000; and (iii) orders her to pay a $40,000 civil penalty. As explained below, the proposed consent judgment fairly reflects the scope of relief likely to be obtained by the SEC under the applicable law if successful on the merits at trial, taking into account the litigation risks likely to be presented, the benefits to each of the parties of avoiding those risks, the willingness of Mulvaney to consent to a judgment and not deny the SEC's allegations further, the SEC's interest in detailing publicly the facts that led it to pursue this action, and the public's interest in knowing those facts. The relief contemplated by the proposed consent judgment is fair, reasonable, adequate and in the public interest. Accordingly, the proposed consent judgment should be approved and entered.

# BACKGROUND

## I. Sachdeva's Embezzlement From Koss.

As alleged in the Complaint, from 2004 through 2009, Mulvaney helped Sujata Sachdeva ("Sachdeva"), who at the time served as the Principal Accounting Officer, Secretary, and Vice-President of Finance of Koss Corporation ("Koss"), to embezzle approximately $34 million from the company using numerous fraudulent wire transfers, cashier's checks, and petty cash withdrawals, most of which Sachdeva spent on lavish shopping sprees.

Sachdeva has admitted many details of the embezzlement. On July 27, 2010, Sachdeva pled guilty in a criminal proceeding to federal wire fraud charges. (*See United States v. Sachdeva*, Case No. 10-cr-006 (E.D. Wis.), Change of Plea Minutes, Doc. No. 31 (Ex. A)) In her plea agreement, Sachdeva admitted that she had "fraudulently authorized and directed the issuance of more than 500 cashier's checks totaling approximately $17.5 million" to pay personal expenses and that she had "fraudulently authorized 206 wire transfers totaling more than $16 million from Koss' operating accounts to American Express to pay for personal expenses." (*United States v. Sachdeva*, Case No. 10-cr-006 (E.D. Wis.), Plea Agreement ¶ 5, Doc. No. 29 (Ex. B)). She also admitted that, "[t]o conceal her fraud, Sachdeva made, and directed other Koss employees to make, numerous fraudulent entries in Koss's books and records to make it appear that Sachdeva's fraudulent transfers were legitimate business transactions." (*Id.*)

Koss's restated financial statements, filed with the SEC on June 30, 2010, reflect Sachdeva's embezzlements for the fiscal years ended June 30, 2008 and June 30, 2009, and the periods ending September 30, 2009, December 31, 2009 and March 31, 2010. (*See* Koss Corporation's Form 10-K/A for the fiscal year ended June 30, 2009 ("2009 Form 10-K/A") (Ex.

C))[1]  The yearly amounts stolen were significant in relation to both sales and shareholder equity. For example, during the fiscal year ended June 30, 2009, Sachdeva stole approximately $8.5 million, while the company had total sales of $41.7 million and retained earnings of $17.1 million at year-end.  (*Id.* at 4, 31-32)

## II.     Mulvaney's Role in the Fraud.

The SEC's Complaint alleges that Mulvaney helped Sachdeva to hide her theft by making false accounting entries in Koss's books and records and maintaining two sets of files comprised exclusively of the fraudulent accounting, which were known by Mulvaney and Sachdeva as the "red book" and the "rainbow files."  In so doing, Mulvaney violated various books and records provisions of the Exchange Act, aided and abetted Sachdeva's violations of the antifraud provisions of the Exchange Act, and aided and abetted Koss's reporting, books and records, and internal controls violations of the Exchange Act.

The SEC believes that, if the case proceeded to trial, the evidence would show that Mulvaney played a significant role in Sachdeva's scheme.  Specifically, the SEC would prove at trial that Mulvaney knowingly, or at least recklessly, prepared and entered false journal entries that hid Sachdeva's embezzlements even though there was no documentation supporting the transactions.  The red book and rainbow files, which Mulvaney maintained in her office, reflect her knowing participation in Sachdeva's scheme.  The former group of files was maintained in three red binders; the latter group was maintained in a series of colored file folders organized by year.  The rainbow files represent 117 fraudulent transactions, totaling approximately $3 million in embezzlements.  Documentation behind the 117 fraudulent transactions shows customer

---

[1] Koss filed Form 10-K/A for the fiscal year ended June 30, 2009, including restated financial statements for fiscal year ended June 30, 2008, and Form 10-Q/A's for the periods ended September 30, 2009, December 31, 2009 and March 31, 2010.

accounts receivable payments being wiped out with offsetting transactions to sales accounts, a process referred to in the SEC's Complaint as "DC Wipes." In addition, Mulvaney's computer contained a falsified version of a July 31, 2006 Koss bank account statement from Park Bank, created to look like the real version but with four fewer transactions. The missing transactions reflect deposits of over $300,000 and Sachdeva's fraudulent withdrawal of those funds.

In her Answer, Mulvaney has admitted several facts alleged in the Complaint regarding her role in making false accounting entries in Koss's books and records. (*See* Answer of Defendant Julie Mulvaney, Doc. No. 9 ("Ans.").) Among other things, Mulvaney has admitted:

- she made a number of entries of credits and debits into a general journal; made adjustments in specific ledger accounts; prepared a number of financial statements, including trial balances, balance sheets, income statements and other underlying accounting data, which data were then embedded in quarterly and annual statements of Koss filed with the SEC (Ans. ¶ 3);

- in her position as Senior Accountant, she made entries of daily postings of transactions into the general journal and made adjustments in specific ledger accounts; she reconciled accounts receivable; she ordered Cashier's checks; and she processed wire transfers and checked the daily bank account balances indicating cash received by Koss (Ans. ¶ 9);

- she knew that Sachdeva used money from Koss checks, payable to cash, to pay her retinue of personal helpers, *i.e.*, general handyman, nanny, housekeepers, babysitters (Ans. ¶ 12);

- she created and maintained the "red book" paper file that recorded all the adjustments she made to cover up Sachdeva's embezzlements and "which resulted in a picture of the Koss financial and economic position not reflective of actual transactions within that period" (Ans. ¶25);

- she created and maintained the "rainbow files" described in the Complaint and executed the fraudulent accounting procedures known as "DC Wipes" (Ans. ¶ 31); and

- she altered a July 31, 2006 bank statement of Park Bank to create a record of deposits and withdrawals during a particular period (Ans. ¶ 37).[2]

---

[2] Although Mulvaney was not identified by name in Sachdeva's plea agreement, Mulvaney's admissions in her Answer strongly suggest that she was the primary Koss employee who made fraudulent entries in Koss's books and records to cover up the embezzlement as referenced in the agreement. The SEC and

4

Although Mulvaney has admitted making false accounting entries as alleged in the Complaint, she nonetheless defends her actions by maintaining that she made those entries "at the express direction of Ms. Sachdeva," who she describes as "her powerful, imperious, determined, willful superior, to whom she was subordinate, and with whom she had a personal relationship which Ms. Mulvaney perceived to be a friendship." (*See, e.g.*, Ans. ¶¶ 22-25, 31, 37) Mulvaney also maintains that Sachdeva assured her all of the entries "were appropriate and legitimate" and that she did not know Sachdeva was engaged in a massive theft from the company. (*See, e.g.*, Ans. ¶¶ 3, 9) Thus, the SEC expects that the primary contested issues at trial would be whether Mulvaney exhibited the level of intent required for the charges against her.[3]

### III. The Proposed Consent Judgment.

The proposed consent judgment as to Mulvaney provides that, without admitting or denying the SEC's allegations, she agrees to the entry of an order that (i) permanently restrains and enjoins her from violating Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5 and 13b2-1 thereunder, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder; (ii) orders her to pay disgorgement of $22,600 plus prejudgment interest of $5,000; and (iii) orders her to pay a $40,000 civil penalty. In addition, consistent with the Court's instructions in

---

Mulvaney agreed to settle this case before Sachdeva was deposed. If this case were to proceed through discovery and trial, the SEC expects that Sachdeva would testify consistent with her plea agreement.

[3] The SEC's claim that Mulvaney violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder require the SEC to prove that Mulvaney "knowingly" circumvented or failed to implement a system of internal account controls, or "knowingly" falsified the books, records and accounts of Koss. *See* 15 U.S.C. § 78m(b)(5); 17 C.F.R. § 240.13b2-1. The SEC's claims that Mulvaney aided and abetted Sachdeva's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as well as Koss's violations of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, 13a-11 and 13-a13, require the SEC to prove that Mulvaney "knowingly provided substantial assistance" to the primary violators. *See* 15 U.S.C. § 78t(e).

the related case *SEC v. Koss Corporation and Michael J. Koss*, Case No. 2:11-cv-00991 (E.D. Wis.), the proposed consent judgment expressly includes the provisions from Mulvaney's signed Consent rather than incorporating them by reference. In this manner, the parties have sought to avert any concerns regarding whether the form of the proposed consent judgment complies with the governing case law of the Court of Appeals for this Circuit.[4]

## DISCUSSION

**I.** **Legal Standard.**

The use and entry of consent judgments has long been endorsed by the Supreme Court. *See, e.g., United States v. Armour & Co.*, 402 U.S. 673, 681 (1971); *Swift & Co. v. United States*, 276 U.S. 311, 324-27 (1928). To approve the proposed consent judgment in this case, the Court must find that the judgments are fair, adequate and reasonable. *See SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (providing standard of review and further noting that "courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment"); *see also SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) (finding that "unless the consent decree specifically provides otherwise once the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end").

---

[4] In *SEC v. Koss Corporation and Michael J. Koss*, this Court also questioned whether the SEC's consent judgments generally may be considered "final judgments" within the meaning of the Federal Rules of Civil Procedure. (*See SEC v. Koss Corporation and Michael J. Koss*, Case No. 2:11-cv-00991, Doc. No. 5 at 4.) The SEC addressed the finality of its consent judgments in its Memorandum in Response to Questions Posed by the Court Regarding Proposed Settlement, submitted in that case. (*See SEC v. Koss Corporation and Michael J. Koss*, Case No. 2:11-cv-00991, Doc. No. 6 at 14-17.) In its February 1, 2012 letter indicating that the Court would enter the proposed judgments as to Koss and Michael J. Koss, the Court stated that it continued to question the finality of the judgments but would not withhold its approval of the settlements on that basis. (*See SEC v. Koss Corporation and Michael J. Koss*, Case No. 2:11-cv-00991, Doc. No. 7.) The SEC respectfully submits that the Court should follow the same approach here and enter the proposed consent judgment as to Mulvaney as a "final judgment."

The September 14 Order relies on the district court's decision in *SEC v. Citigroup Global Markets Inc.*, 2011 WL 5903733 (S.D.N.Y. Nov. 28, 2011), to establish the standard of review for the proposed consent judgment in this case. In *Citigroup*, the district court held that an SEC consent judgment may be approved only if the court finds that it is fair, adequate, reasonable, ***and*** in the public interest. *See id.* at \*2-\*3 (emphasis added). Finding that the parties had not demonstrated that the consent judgments proposed in that case were "fair, adequate, reasonable, and in the public interest," the district court in *Citigroup* refused to enter the judgments and ordered the parties to proceed to trial. *Id.* at 335.

The parties appealed the district court's decision in *Citigroup* to the Court of Appeals for the Second Circuit, with the SEC also petitioning in the alternative for a writ of mandamus to set aside the district court order. *See SEC v. Citigroup Global Markets Inc.,* 673 F.3d 158 (2d Cir. 2012). The Second Circuit granted the SEC's motion to stay the district court proceedings pending disposition of the appeals and mandamus petition, finding that the appellants had demonstrated a strong likelihood of success on the merits in their effort to overturn the district court ruling. *See id*. at 163. In so doing, the Second Circuit provided substantial guidance regarding judicial review of consent judgments in cases brought by executive agencies such as the SEC. Specifically, the court of appeals criticized the district court's suggestion that consent judgments without admissions of liability constitute bad policy and are contrary to the public interest, as well as the district court's apparent failure to give deference to the SEC's judgment on matters of policy. *See id.* at 164 ("while we are not certain we would go so far as to hold that under no circumstances may courts review an agency decision to settle, the scope a court's authority to second-guess an agency's discretionary and policy-based decision to settle is at best minimal."). As the Second Circuit explained:

7

> The numerous factors that affect a litigant's decision whether to compromise a case or litigate it to the end include the value of the particular proposed compromise, the perceived likelihood of obtaining a still better settlement, the prospects of coming out better, or worse, after a full trial, and the resources that would need to be expended in the attempt. In the case of a public executive agency such as the SEC, the factors also include an assessment of how the public interest is best served. ***These are precisely the factors that the Supreme Court has recognized as making a discretionary agency decision unsuitable for judicial review***.

*Id.* at 164 (emphasis added).[5] *See also SEC v. Cioffi*, 2012 WL 2304274, at *6 (E.D.N.Y. June 18, 2012) (discussing the Second Circuit's critique of the district court's opinion in *Citigroup*).

In the present case, the proposed consent judgment as to Mulvaney is in the public interest, as well as being fair, adequate and reasonable, and therefore satisfies the standard applied by the district court in *Citigroup*.[6] Thus, regardless of the outcome of the *Citigroup* appeal, the Court should approve and enter the proposed judgment.

## II.     The SEC's Proposed Settlement with Mulvaney Should Be Approved.

As an initial matter, the proposed settlement in this case was reached through good-faith, arms-length negotiations between the SEC and Mulvaney, who has been represented by experienced counsel throughout this litigation. There is no indication that Mulvaney's agreement to the settlement terms was anything other than informed and voluntary. As a result, a presumption of fairness, adequacy and reasonableness should attach to the settlement. *See Wal-*

---

[5] Although the Second Circuit found a "likelihood of success" on the merits of the *Citigroup* appeal, the court also expressly stated that the merits panel would be free to resolve all issues on the appeal without preclusive effect from the ruling granting the stay. *Id.* at 161.

[6] There is no reason for the Court to postpone entering the proposed consent judgment until after the resolution of the *Citigroup* appeal. *See SEC v. Cioffi*, 2012 WL 2304274, at *9 (E.D.N.Y. June 18, 2012) (finding that there was no need for the court to await a decision by the Second Circuit in *Citigroup* before ruling on entry of an SEC consent judgment). As discussed in this brief, the proposed consent judgment satisfies the standard for consent judgments even as applied by the district court in *Citigroup* – i.e., it is fair, reasonable, adequate and in the public interest – and therefore it should be approved regardless of the outcome of the appeal. Moreover, the Second Circuit's would not be controlling for a district court in the Seventh Circuit.

8

*Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005); *Cioffi*, 2012 WL 2304274, at *6.

The proposed consent judgment provides for three primary forms of relief: (i) a permanent injunction against future violations of the securities laws of the type alleged in the Complaint, (ii) payment of disgorgement with prejudgment interest, and (iii) payment of a civil penalty.

First, Mulvaney has consented to the entry of an injunction against future violations of the particular provisions of the federal securities laws that she is alleged to have violated.[7] The injunctive relief portion of the proposed consent judgment is similar in form and substance to the injunction entered in this action against Sachdeva (Doc. No. 18), as well as those entered in other SEC enforcement actions by district courts in this Circuit and elsewhere. (*See, e.g., SEC v. Wealth Management LLC et al.*, Case No. 09-cv-506 (E.D. Wis.), Final Judgment as to Defendant Simone O. Fevola dated March 4, 2010, Doc. No. 218; *SEC v. Merge Healthcare Inc. et al.*, Case No. 09-cv-1036 (E.D. Wis.), Final Judgment as to Defendant Merge Healthcare dated November 17, 2009, Doc. No. 10; *SEC v. Frohna*, Case No. 07-cv-702 (E.D. Wis.), Final Judgment as to Defendant Joseph A. Frohna dated August 7, 2007, Doc. No. 4.).

The proposed injunction will deter future violations by Mulvaney and provide a means for the SEC to seek relief in the form of a contempt order if she nonetheless commits future violations of the same provisions at issue here. Permanent injunctions such as the one proposed in this case "protect the public by informing potential investors that a certain person has violated

---

[7] The proposed injunction has the same scope as the SEC would seek at trial. In contrast to private plaintiffs, in order to obtain injunctive relief at trial, the SEC would not need to prove the risk of irreparable injury, establish the unavailability of other remedies, or establish that the balance of equities favor its position. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1035 (2d Cir. 1990) ("In our earliest encounters with injunction requests by the Commission, we relieved the Commission of the obligation, imposed on private litigants, to show risk of irreparable injury or the unavailability of remedies at law") (citations omitted).

SEC rules in the past and by reminding defendants that they must obey the law in the future." *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983). The proposed injunction fairly and adequately reflects the scope of misconduct alleged in the Complaint and would serve the public interest.

Next, the consent judgment orders payment of disgorgement with prejudgment interest. Disgorgement is an equitable remedy designed to deprive a wrongdoer of unjust enrichment and also to deter others. *See SEC v. Black*, 2009 WL 1181480, *2 (N.D. Ill. 2009). In its enforcement actions, the SEC is required to show that the amount of disgorgement sought is a "reasonable approximation" of the profits the defendant reaped from the wrongful conduct. *See First City Financial Corp.,* 890 F.2d 1215, 1231 (D.C. Cir. 1989); *SEC v. Randy,* 38 F.Supp.2d 657, 673-74 (N.D.Ill. 1999). The burden then shifts to the defendant to show that the approximation is inaccurate. *First City Financial Corp.,* 890 F.2d at 1232; *Randy,* 38 F.Supp.2d at 674. Any ambiguity in the calculation should be resolved against the defrauding party. *See SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996).

The proposed consent judgment against Mulvaney requires her to pay disgorgement plus prejudgment interest totaling $27,600. The disgorgement amount reflects a reasonable portion of the ill-gotten gains or profits that the SEC would seek to prove at trial that Mulvaney received as a result of the misconduct alleged in the Complaint. Specifically, the agreed disgorgement amount reflects (i) a $20,000 "loan" that Sachdeva made to Mulvaney, which the evidence would show consisted of funds embezzled from Koss, and (ii) $2,600 in uncashed personal checks written by Mulvaney to Koss's petty cash fund, which the SEC claims represent unauthorized "loans" of corporate funds that Mulvaney made to herself and concealed behind Sachdeva's theft. The proposed consent judgment provides for the funds to be deposited with the Court

10

pending further motion by the SEC regarding distribution. Because the funds were taken from Koss, the SEC intends to file a motion to request that the Court order the funds to be distributed back to the company.

If this case were to proceed to trial, the SEC likely would seek disgorgement of additional amounts that were received by Mulvaney as payment for assisting Sachdeva in carrying out the fraud, including tuition reimbursements that the SEC would seek to establish were approved by Sachdeva even though Mulvaney was not entitled to them under Koss policy. In determining to forgo seeking disgorgement of these additional amounts, the SEC has considered the resources required to effectively trace all of the embezzled funds either to Sachdeva and Mulvaney, and the litigation risks associated with doing so.

Finally, the Complaint also asks the Court to impose a civil penalty against Mulvaney pursuant to Section 21(d)(3) of the Exchange Act. *See* 15 U.S.C. § 78u(d)(3). Section 21(d)(3) establishes a three-tier approach to determining the maximum amount of the civil penalty that may be imposed for violations of the Exchange Act. The second tier establishes the maximum penalty amounts for violations by natural persons who engage in violations involving fraud, while the third tier establishes the maximum penalty amount for violations by natural persons involving fraud ***and*** substantial losses or risk of losses to others. *See id.* For this case, at trial, the SEC could seek a third-tier penalty against Mulvaney, reflecting the facts that her conduct involved fraud and contributed to Koss's loss of approximately $32 million through Sachdeva's embezzlement. The maximum civil penalty amount for each tier of penalties adjusts for inflation every four years. For Mulvaney's Exchange Act violations that took place between February 14, 2005 and March 3, 2009, the SEC could seek a maximum third-tier penalty of $130,000 or the gross amount of pecuniary gain she received as a result of the violation. For Mulvaney's

Exchange Act violations that took place after March 3, 2009, the SEC could seek a maximum third-tier penalty of $150,000 or the gross amount of pecuniary gain that she received.

As reflected in the proposed consent judgment, Mulvaney has agreed to pay a civil penalty of $40,000. The $40,000 civil penalty falls within the range of civil penalties that the Court could impose against Mulvaney based on a third-tier penalty analysis. The SEC has determined that a $40,000 penalty amount would adequately reflect the egregious magnitude and duration of the fraud in which Mulvaney was involved, while taking into account the possibility that a fact-finder may find credible Mulvaney's claims that she played a subordinate role in the scheme, and therefore decline to impose a penalty at the higher end of the penalty range. If the case were to proceed to trial, the SEC would likely seek a higher civil penalty.

Overall, in determining to resolve this case on the terms reflected in the proposed consent judgment, the SEC has considered the litigation risks associated with a trial. Among other things, the SEC expects that Mulvaney would argue that her false accounting entries were made only at the explicit direction of Sachdeva, with assurances from Sachdeva that the entries were appropriate and legitimate. In response, the SEC would present evidence and arguments at trial to show that Mulvaney played a more active role in the fraud than she claims and that, in any case, her arguments that she was simply following orders, even if true, do not absolve her of responsibility for her actions. The SEC believes that it has the stronger position on the law and the facts. Nevertheless, the SEC considered the possibility that a fact-finder might take such arguments into account in determining both liability and the appropriate relief.

In sum, the SEC appropriately exercised its discretion to resolve its pending claims against Mulvaney through settlement. In so doing, the SEC assessed the prospects for trial, the resources that would need to be expended in order to pursue additional relief through litigation,

and how best to serve the public interest. As discussed above, the resulting settlement is fair, reasonable, adequate and in the public interest.[8] Accordingly, the district court should enter the proposed consent judgment.

## CONCLUSION

For the foregoing reasons, the SEC respectfully submits that the proposed settlement between the SEC and Mulvaney is fair, reasonable, adequate and in the public interest, and accordingly requests that the Court enter the proposed final judgment by consent.


Dated: October 15, 2012                     Respectfully submitted,


/s/ Andrea R. Wood
Andrea R. Wood
John E. Birkenheier
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398
E-mail: woodar@sec.gov
E-mail: birkenheierj@sec.gov

---

[8] The SEC will respond to any further questions regarding the proposed settlement or submit additional information as the Court may desire.

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **Plaintiff Securities and Exchange Commission's Memorandum in Support of the Proposed Settlement with Julie Mulvaney** using the ECF System for the Eastern District of Wisconsin.

 David Loeffler, Esq. (dfl@kclegal.com; car@kclegal.com)
 Counsel for Defendant Julie Mulvaney

Additionally, I hereby certify that I sent the filing by electronic mail and by United States Postal Service to the following non-ECF participant:

 Defendant Sujata Sachdeva, c/o Andrew Erlandson, Esq.; Hurley, Burish & Stanton, S.C.; 33 East Main Street, Suite 400; Madison, WI 53701-1528; aerlandson@hbslawfirm.com.


Dated: October 15, 2012            Respectfully submitted,


                 s/ Andrea R. Wood